IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LORRAINE HERRERA, | : |
| Plaintiff, | : CIVIL ACTION NO. 17-4287 |
| v. | : |
| CUMRU TOWNSHIP POLICE DEPARTMENT and MOTOR VEHICLE FROM THE STATE OF PENNSYLVANIA, | : |
| Defendants. | : |

## **MEMORANDUM OPINION**

Smith, J.                                                                                                                     October 25, 2017

The *pro se* plaintiff seeks leave to proceed *in forma pauperis* in this action against a municipal police department and the Pennsylvania Department of Transportation. The plaintiff claims that she received a series of traffic tickets that eventually resulted in two police officers and an employee of a magisterial district judge conspiring to steal her identity. Although the court will grant leave to the plaintiff to proceed *in forma pauperis*, the court must dismiss the complaint under 28 U.S.C. § 1915(e)(2)(B) because she has failed to state a plausible claim for relief against the defendants.

##       I.      ALLEGATIONS AND PROCEDURAL HISTORY

The *pro se* plaintiff, Lorraine Herrera, commenced this action by filing an application to proceed *in forma pauperis* (the "IFP Application") and a proposed complaint against the Cumru Township Police Department ("CTPD") and the "Motor Vehicle from the State of Pennsylvania" on September 26, 2017.[1] Doc. No. 1. In the complaint, the plaintiff claims that an Officer Coke

---
[1] The court has interpreted the plaintiff's reference to the "Motor Vehicle from the State of Pennsylvania" as referring to the Pennsylvania Department of Transportation (hereinafter referred to as "PennDOT"). The court also

of the CTPD stole her identity. Complaint at ECF p. 6. More specifically, the plaintiff alleges that she was traveling to a Chinese restaurant on September 4, 2017, when a male CTPD police officer stopped her vehicle. *Id.* When the officer approached and spoke to the plaintiff, he informed her that he stopped her vehicle because he ran her license plate and discovered that her car was unregistered. *Id.* Upon the officer asking the plaintiff for her driver's license and vehicle registration, she produced (1) her New Jersey driver's license (which is the only license she claims to have), (2) her expired New Jersey Motor Vehicle registration card, and (3) her expired insurance identification card. *Id.*

The CTPD officer took the plaintiff's documents and, when he returned, asked her if she knew her license had been suspended. *Id.* The plaintiff informed the officer that she knew that her license was suspended. *Id.* Then, they "exchanged a few words." *Id.* The officer gave the plaintiff three tickets and returned her documents to her. *Id.*

After receiving the three tickets, the plaintiff then traveled to the Chinese restaurant, ate dinner, and went to a gas station. *Id.* The plaintiff parked in a handicapped parking space. *Id.* The plaintiff went inside the gas station and purchased something. *Id.* After making this purchase, the plaintiff noticed another CTPD police vehicle parked across the street from the gas station. *Id.* The plaintiff got into her vehicle and headed for home. *Id.*

As she was traveling home, the other police vehicle followed her. *Id.* A while later, the police vehicle's lights started flashing so the plaintiff stopped her vehicle. *Id.* Although the plaintiff waited for an officer to approach her, the officer did not approach, so she decided to drive to the parking area where she lives. *Id.* The police vehicle followed her and then set off the siren. *Id.*

---

notes that the plaintiff separately filed a request to proceed *pro se* because she "trust[s] no one." *See* Doc. No. 2 (alteration to original). Although the plaintiff needs permission from the court to proceed without prepayment of the filing fee, she does not need permission to proceed *pro se* as she has the right to do so.

The plaintiff managed to park her vehicle near her apartment building. *Id.* The police vehicle pulled behind the plaintiff's vehicle and a male officer exited the vehicle. *Id.* This officer approached the plaintiff and asked her if she knew why he had stopped her. *Id.* The plaintiff indicated that she did not know why he stopped her, and he informed her that he saw that she had parked in a handicapped parking space and asked if she had a handicap placard. *Id.* The plaintiff told him that she did not and they "exchanged a few words." *Id.*

The officer then asked the plaintiff for her driver's license and vehicle registration. *Id.* She gave him the same documents she gave to the prior officer. *Id.* The officer took these documents and returned to his patrol vehicle. *Id.* When the officer returned to speak to the plaintiff, he gave her three more tickets. *Id.*

The plaintiff went to the magisterial district court located in Mohnton, Pennsylvania on September 6, 2017, to request a payment plan. *Id.* A female employee named Lisa assisted the plaintiff while she was in the magisterial district court. *Id.* The plaintiff gave Lisa the six tickets she received on September 4, 2017, and informed her that she wanted to arrange for a payment plan. *Id.* at ECF pp. 6-7, 8. Lisa gave the plaintiff a "District Court 23-2-04 Partial Payment Plan Application."[2] *Id.* at ECF pp. 7, 8. The plaintiff completed the application and returned it to Lisa. *Id.* at ECF p. 8. At the plaintiff's request, Lisa gave her copies of the papers she completed. *Id.* When she received the copies, she "did not get to review" them.[3] *Id.*

The plaintiff first reviewed the papers she received from Lisa on September 24, 2017.[4] *Id.* The plaintiff noticed that Lisa gave her the wrong papers insofar as she received papers

---

[2] The plaintiff appears to have scanned a completed copy of the form to her complaint. *See* Complaint at ECF p. 7.
[3] The plaintiff does not indicate why she was unable to review the documents.
[4] The plaintiff alleges that she first reviewed the copies "yesterday." Complaint at ECF p. 8. Since the plaintiff signed the complaint on September 25, 2017, the court infers that she reviewed the copies on September 24, 2017.

3

"numbered MDJS 416A Pages 1 of 8."[5] *Id.* The plaintiff attaches the purported "wrong papers" to the complaint. *Id.* at ECF pp. 8-18.

Apparently, the plaintiff received three notices dated September 19, 2017 from PennDOT's Bureau of Driver Licensing, which reference (1) the plaintiff having a driver's license number of 32843059, and (2) a processing date of September 12, 2017.[6] *Id.* at ECF p. 18. Upon receiving these notices, the plaintiff realized that someone had stolen her identity and she believes that the perpetrators were the "officers who had given me the tickets along with Lisa." *Id.* The plaintiff notes that she could not obtain a Pennsylvania driver's license insofar as (1) her New Jersey license was suspended due to her not turning in her New Jersey license plates, and (2) she is on a payment plan with the State of New Jersey for a surcharge violation and she first needs to fulfill her obligations with New Jersey.[7] *Id.* at ECF pp. 18-19.

The plaintiff believes that one of the "officer[s] who has conspired against [her] has been stocking [sic] [her] and [her] children, due to catching him posted on the parking area of the Complex apartment building to where [she] live[s]." *Id.* at ECF p. 19 (alterations to original). The stealing of her identity by individuals who are supposed to be protecting the law has caused her significant stress.[8] *Id.* She is "urging requesting for an investigation to be drought [sic] up upon this situation, for all who may be involved be removed of position due to abuse of position, and charges be brought against anyone who may be involved."[9] *Id.*

---

[5] It is unclear from the complaint how these were the "wrong papers," as they, *inter alia* (1) reference six tickets, (2) indicate that the tickets were resolved on September 6, 2017, (3) reference a payment plan and Magisterial District Court 23-2-04, and (4) reference the plaintiff and her address that she also identified on the complaint in this case.
[6] The plaintiff attaches copies of the notices to the complaint. *See* Complaint at ECF pp. 22-27.
[7] The plaintiff attaches copies of documents relating to the surcharge violation to the complaint. *See* Complaint at ECF pp. 20-21.
[8] She also indicates that it has caused stress to her son and another individual. *See* Complaint at ECF p. 19.
[9] The plaintiff also includes a copy of a parking ticket she received on September 11, 2017, from CTPD and the receipt for her payment of the ticket. *See* Complaint at ECF pp. 29-30.

## A.     The IFP Application

Regarding applications to proceed *in forma pauperis*, the court notes that

> any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor.

28 U.S.C. § 1915(a)(1).[10] This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Specifically, Congress enacted the statute to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files a lawsuit, would not prevent indigent persons from pursuing meaningful litigation. *Deutsch*[ *v. United States*, 67 F.3d 1080, 1084 (3d Cir. 1995)]. Toward this end, § 1915(a) allows a litigant to commence a civil or criminal action in federal court in *forma pauperis* by filing in good faith an affidavit stating, among other things, that he is unable to pay the costs of the lawsuit. *Neitzke,* 490 U.S. at 324, 109 S.Ct. 1827.

*Douris*, 293 F. App'x at 131-32 (footnote omitted).

When addressing applications to proceed *in forma pauperis* under section 1915, district courts undertake a two-step analysis: "First, the district court evaluates a litigant's financial status and determines whether [he or she] is eligible to proceed *in forma pauperis* under § 1915(a). Second, the court assesses the complaint under § 1915[(e)(2)] to determine whether it is frivolous." *Roman v. Jeffes*, 904 F.2d 192, 194 n.1 (3d Cir. 1990) (citing *Sinwell v. Shapp*, 536 F.2d 15 (3d Cir. 1976)).[11]

---

[10] "The reference to prisoners in § 1915(a)(1) appears to be a mistake. *In forma pauperis* status is afforded to all indigent persons, not just prisoners." *Douris v. Middletown Twp.*, 293 F. App'x 130, 132 n.1 (3d Cir. 2008) (per curiam).

[11] The *Roman* court referenced the former version of 28 U.S.C. § 1915(d), which stated that "[t]he court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." 28 U.S.C. § 1915(d) (1990) (redesignated as section 1915(e) by the Prison Litigation Reform Act, Pub.L. No. 104-135, 110 Stat. 1321 (1996)). The portion of section 1915(d) which allowed the district court to dismiss frivolous *in forma pauperis* complaints is now codified at 28 U.S.C. § 1915(e)(2)(B)(i). *See* 28 U.S.C. § 1915(e)(2)(B)(i) (stating frivolous nature of *in forma pauperis* complaint is ground for dismissal).

Concerning the litigant's financial status, the litigant must establish that he or she is unable to pay the costs of suit. *Walker v. People Express Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir. 1989). "In this Circuit, leave to proceed *in forma pauperis* is based on a showing of indigence. We review the affiant's financial statement, and, if convinced that he or she is unable to pay the court costs and filing fees, the court will grant leave to proceed *in forma pauperis*." *Deutsch*, 67 F.3d at 1084 n.5 (internal citations omitted).

The Third Circuit does not define what it means to be indigent. Nonetheless, "[a] plaintiff need not 'be absolutely destitute to enjoy the benefit of the statute.'" *Mauro v. New Jersey Supreme Ct., Case No. 56, 900*, 238 F. App'x 791, 793 (3d Cir. 2007) (per curiam) (quoting *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948)); *see also Potnick v. Eastern State Hosp.*, 701 F.2d 243 (2d Cir. 1983); *Zaun v. Dobbin*, 628 F.2d 990 (7th Cir. 1980). Some courts have explained that all a plaintiff needs to show is that because of his or her poverty, he or she cannot afford to pay for the costs of the litigation and provide himself or herself (or his or her family) with the necessities of life. *See, e.g.*, *Rewolinski v. Morgan*, 896 F. Supp. 879 (E.D. Wis. 1995) ("An affidavit demonstrating that the petitioner cannot, because of his poverty, provide himself and any dependents with the necessities of life is sufficient."); *Jones v. State*, 893 F. Supp. 643 (E.D. Tex. 1995) ("An affidavit to proceed *in forma pauperis* is sufficient if it states that one cannot, because of poverty, afford to pay for the costs of litigation and still provide for him- or herself and any dependents.").

Here, after reviewing the IFP Application, it appears that the plaintiff is unable to pay the costs of suit. Therefore, the court will grant the plaintiff leave to proceed *in forma pauperis*.

## B. Review of the Complaint Under 28 U.S.C. § 1915(e)(2)(B)

### 1. Grounds for *Sua Sponte* Dismissal Under 28 U.S.C. § 1915(e)(2)(B)

Because the court has granted the plaintiff leave to proceed *in forma pauperis*, the court must engage in the second part of the two-part analysis and examine whether the complaint is frivolous, fails to state a claim upon which relief can be granted, or asserts a claim against a defendant immune from monetary relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii) (providing that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that-- . . . **(B)** the action or appeal-- **(i)** is frivolous or malicious; **(ii)** fails to state a claim on which relief may be granted; or **(iii)** seeks monetary relief against a defendant who is immune from such relief."). A complaint is frivolous under section 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch*, 67 F.3d at 1085. In addressing whether a *pro se* plaintiff's complaint is frivolous, the court must liberally construe the allegations in the complaint. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339-40 (3d Cir. 2011).

Regarding the analysis under section 1915(e)(2)(B)(ii), the standard for dismissing a complaint for failure to state a claim pursuant to this subsection is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). Thus, to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556 (citation omitted).

## 2. Analysis

Unfortunately, there are numerous issues with the complaint in its current form. First, while the plaintiff's allegations are fairly specific about her interaction with the police on September 4, 2017, and her interaction with Lisa at the magisterial district judge's office on September 6, 2017, they are vague as to her stolen identity claim. More specifically, the plaintiff readily acknowledges that (1) she received six tickets on September 4, 2017, (2) she was operating her vehicle despite having a suspended New Jersey driver's license, an expired vehicle registration, and an expired vehicle insurance card, and (3) she parked in a handicapped parking space despite not having a handicap placard. She does not appear to argue that any of the tickets she received were unwarranted and, in fact, had gone to the magisterial district judge's office to (presumably) accept responsibility for the tickets and obtain a payment plan.

The plaintiff even acknowledges that she did not review the papers Lisa provided to her after she asked for copies of her documents. Yet, she claims that the paperwork she received was not her paperwork despite the documents on their face appearing to relate to the plaintiff and her traffic tickets. The plaintiff does not state how these documents were different. It is unclear if she is claiming that a stolen identity resulted in her receiving this paperwork, or if she is just asserting that she received the wrong paperwork to buttress her claim that her identity was later stolen. At bottom, it is unclear how the "wrong" paperwork relates to her stolen identity and conspiracy claim.

Regardless, the plaintiff's conspiracy allegation cannot survive as it is currently pleaded because she has not plausibly pleaded a conspiracy claim and it is instead based solely on speculation and conjecture. *See Twombly*, 550 U.S. at 556 ("[A] bare assertion of conspiracy will not suffice" to state a claim); *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) ("[T]o properly plead an unconstitutional conspiracy, a plaintiff

must assert facts from which a conspiratorial agreement can be inferred."). To the extent that the plaintiff based her claim on the aforementioned six tickets, there is nothing plausible from the complaint to suggest that anything wrongful or conspiratorial occurred. To the extent that the plaintiff based her claim on receiving a notice of license suspension from PennDOT, there are no facts alleged as to how these defendants conspired to steal her identity. It appears she is claiming that after she received the six tickets on September 4th, and accepted responsibility for the tickets on September 6th, the two police officers and Lisa conspired (it is unclear from the complaint if these three individuals also conspired with PennDOT) to use her name to create a fake Pennsylvania driver's license for her so that PennDOT would (seemingly by the "processing date" of September 12, 2017, but no later than September 19, 2017) suspend a driver's license that she actually does not have and otherwise cause her emotional distress. Even if she had specifically pleaded these facts, she still would not have plausibly stated a conspiracy claim that would entitle her to relief.[12] Therefore, the court must dismiss the plaintiff's conspiracy claims under 28 U.S.C. § 1915(e)(2)(B)(ii).

---

[12] Although not specifically referenced by plaintiff in the complaint, 42 U.S.C. § 1985(3) allows a plaintiff to bring an action for injuries caused by a conspiracy formed "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). To prevail in such a claim, a plaintiff must prove

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of person of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Bhd. of Carpenters and Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828-29 (1983).

Additionally, to the extent that the plaintiff is pursuing a conspiracy claim under 42 U.S.C. § 1983, the plaintiff must establish that "two or more conspirators reach[ed] an agreement to deprive [her] of a constitutional right under color of law." *Berrios v. City of Philadelphia*, 96 F. Supp. 3d 523, 534 (E.D. Pa. 2015) (citing *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1993)). "Such a conspiracy requires a meeting of the minds." *Id.* (citing *Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008)). To prevail in a conspiracy claim under section 1983, the plaintiff must allege and prove:

> (1) there was a single plan, the essential nature and general scope of which [was] known to each person who is to be held responsible for its consequences; (2) the purpose of the plan was to violate a constitutional right of the plaintiff; (3) an overt act resulted in an actual deprivation of the

Second, to the extent that the plaintiff seeks to raise claims under any criminal statutes (for identity theft) or desires an investigation or prosecution of the two officers and Lisa, she cannot proceed on those claims in this action. *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone; in *Cort v. Ash*, 422 U.S. 66, 80, 95 S.Ct. 2080, 2089, 45 L.Ed.2d 26 (1975), for example, we refused to infer a private right of action from 'a bare criminal statute.'"); *Davis v. Warden Lewisburg USP*, 594 F. App'x 60, 61 n.3 (3d Cir. 2015) (per curiam) (explaining that the plaintiff's claim for an alleged violation of his civil rights under 18 U.S.C. § 242 was "meritless because § 242 is a criminal statute, through which no private cause of action is created"); *Godfrey v. Pennsylvania*, 525 F. App'x 78, 80 n.1 (3d Cir. 2013) (per curiam) ("[T]here is no federal right to require the government to initiate criminal proceedings." (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)). Indeed, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S.*, 410 U.S. at 619.

Finally, if the plaintiff is attempting to raise claims under 42 U.S.C. § 1983, her claims also fail. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). With regard to the plaintiff's claims against PennDOT, "[a]bsent a state's consent, the [E]leventh [A]mendment bars a civil rights suit in federal court that names the state as a defendant, even a claim seeking injunctive relief." *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d

---

plaintiff's constitutional rights; and (4) the constitutional violation was the result of an official custom or policy of the municipality.

*Kelleher v. City of Reading*, No. CIV. A. 01-3386, 2002 WL 1067442, at *7 (E.D. Pa. May 29, 2002) (citation omitted).

Cir. 1981) (alteration to original) (citing *Alabama v. Pugh*, 438 U.S. 781 (1978) (per curiam)). This bar "extends to suits against departments or agencies of the state having no existence apart from the state." *Id.* (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)). A state has Eleventh Amendment immunity unless the state consents to the suit or Congress has abrogated its immunity for the claim(s) at issue. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984). Here, the Eleventh Amendment bars the plaintiff's section 1983 claims against PennDOT because (1) it is a state agency, (2) Congress has not abrogated states' immunity from section 1983 actions, and (3) Pennsylvania has not consented to be sued in federal court. *See* 71 P.S. § 61(a) (including PennDOT as one of the administrative departments of the Commonwealth of Pennsylvania); *Nails v. Pennsylvania Dep't of Transp.*, 414 F. App'x 452, 454 (3d Cir. 2011) (affirming district court's dismissal of section 1983 claims against PennDOT).

Concerning the plaintiff's possible section 1983 claims against the CTPD, she has also failed to state a claim because the CTPD, as a township police department, is not a "person" subject to suit under section 1983. *See Mikhaeil v. Santos*, 646 F. App'x 158, 163 (3d Cir. 2016) (concluding that district court "correctly determined that the Jersey City Police Department was not a proper party to this [section 1983] action [because] . . . a city police department is a governmental sub-unit that is not distinct from the municipality of which it is a part"). Even if the CTPD was subject to suit under section 1983, the plaintiff has not stated a plausible claim for relief because she has not included allegations that a municipal policy or custom led to the violation of her rights.

> Regarding liability of municipalities and local governments under section 1983, they
>
> may be liable . . . if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation. See *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 692, 98 S.Ct.

11

> 2018, 56 L.Ed.2d 611 (1978). But, under § 1983, local governments are responsible only for "their *own* illegal acts." *Pembaur v. Cincinnati*, 475 U.S. 469, 479, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (citing *Monell*, 436 U.S., at 665–683, 98 S.Ct. 2018). They are not vicariously liable under § 1983 for their employee's actions. See *id.*, at 691, 98 S.Ct. 2018; *Canton[ v. Harris*, 489 U.S. 378, 392, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989);] *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (collecting cases).
>
> Plaintiffs who seek to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury. *Monell*, 436 U.S., at 691, 98 S.Ct. 2018; see *id.*, at 694, 98 S.Ct. 2018. Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. See *ibid.*; *Pembaur*, *supra*, at 480–481, 106 S.Ct. 1292; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–168, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). These are "action[s] for which the municipality is actually responsible." *Pembaur*, *supra*, at 479–480, 106 S.Ct. 1292.

*Connick v. Thompson*, 563 U.S. 51, 60-61 (2011) (final alteration in original) (emphasis in original).

Under *Monell*, a plaintiff may hold a municipality liable under section 1983 only where the plaintiff establishes that (1) the municipality had a policy, custom or practice, (2) the policy, custom, or practice amounted to deliberate indifference to the plaintiff's constitutional rights, and (3) the policy was the moving force behind the constitutional violation. *See Vargas v. City of Philadelphia*, 783 F.3d 962, 974 (3d Cir. 2015) (citing *Monell*, 436 U.S. at 389-91). A "policy" arises when a decision-maker possessing final authority issues an official proclamation, policy, or edict. *Pembaur*, 475 U.S. at 481. "Customs" are practices so permanent and well settled as to virtually constitute law. *Monell*, 436 U.S. at 691. Regardless of whether a plaintiff is seeking to impose *Monell* liability for a policy or a custom, "it is incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990); *see also Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (explaining that in both methods to obtain liability under *Monell*, "a plaintiff must show that an official who has the power to make policy is

responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom").

Here, the plaintiff has not identified any policy, custom, or practice that would be sufficient to possibly establish *Monell* liability. Instead, it appears as if she is attempting to hold the CTPD liable under a respondeat superior theory of liability. In addition, she has not adequately pleaded that the defendants violated her constitutional rights. After removing her conclusory allegations about the stealing of her identity and the conspiracy, her allegations reflect only that the two CTPD police officers ticketed her for admitted traffic violations and she was required to make payments on those tickets. If the paperwork the plaintiff received was erroneous, she could have returned to the court to address the error.[13] Additionally, to the extent that the plaintiff is complaining about PennDOT suspending her nonexistent Pennsylvania driver's license, she is merely contending that she did not have a Pennsylvania license to suspend, and is not asserting that if she had one, PennDOT was not warranted in suspending it. Also, the suspension notices indicate a procedure by which the plaintiff could challenge the license suspension if she chooses to do so. In sum, the court cannot ascertain any plausible basis for a *Monell* claim from the complaint.

### C. <u>Leave to Amend</u>

A district court should generally provide a *pro se* plaintiff with leave to amend unless amending would be inequitable or futile. *See Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) (stating general rule). Also, although it is unclear whether the plaintiff is asserting a cause of action under 42 U.S.C. § 1983, the court notes that "in civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for

---

[13] It is unclear in any event how the purportedly erroneous paperwork would have been the responsibility of the CTPD.

failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007).

This case presents a difficult set of circumstances as to whether to grant the plaintiff leave to amend because it is unclear as to the precise nature of her claims and her theory of liability. To the extent that she would attempt to assert any section 1983 claim against the defendants, allowing her leave to amend would be futile because PennDOT is entitled to Eleventh Amendment immunity and the CTPD is not a "person" subject to suit under the statute.[14] To the extent that she is attempting to have the two CTPD officers and Lisa criminally investigated or is basing her claims on the violation of any criminal statute, allowing her leave to amend would be futile. Her conspiracy claims lack any plausible factual basis and appear to be purely speculative as well. Nonetheless, out of an abundance of caution, the court will grant leave to the plaintiff to file an amended complaint.

### III. CONCLUSION

For the aforementioned reasons, the court will dismiss the complaint without prejudice to the plaintiff to file an amended complaint.

A separate order follows.

BY THE COURT:

/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

---

[14] These same issues would prohibit the plaintiff from pursuing a section 1985 claim against these defendants.